IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SOL PUERTO RICO LIMITED,<br><br>      Plaintiff<br><br>      v.<br><br>LUIS MORALES-COLLAZO,<br><br>      Defendant | CIVIL NO. 09-1548 (JP) |

**OPINION AND ORDER**

    Before the Court is Plaintiff Sol Puerto Rico Limited's ("Sol") motion for a preliminary injunction (**No. 2**). Plaintiff Sol filed the instant action against Defendant Luis Morales-Collazo ("Morales") alleging claims for false designation of origin, trade dress infringement, and unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq.*, as well as breach of contract pursuant to Article 1053 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 317, and the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, *et seq*. Plaintiff Sol requests that the Court enter a preliminary injunction ordering Defendant Morales to immediately surrender to Sol the Shell branded gasoline service station known as Shell Caimital Service Station in Guayama, Puerto Rico (the "Station"), and immediately comply with all post-termination covenants of the franchise agreements between the parties. For the

CIVIL NO. 09-1548 (JP)          -2-

reasons stated herein, Plaintiff's motion for preliminary injunction is **GRANTED**.

**I.   FACTUAL BACKGROUND**

On March 17, 2004, Defendant Morales entered into a franchise relationship with The Shell Company (Puerto Rico) Limited ("Shell P.R."), by way of three written contracts. On August 31, 2006, the stock of Shell P.R. was sold to Plaintiff Sol. Sol retained the franchisor rights and obligations under the existing franchise agreements with Defendant. The franchise agreements had a fixed term of three years, ending on March 31, 2007, and were subsequently renewable on a month to month basis.

Plaintiff alleges that Defendant Morales has breached several of his obligations pursuant to the franchise agreements. Specifically, Plaintiff alleges that on January 2, 2009, Defendant ceased the sale of gasoline at the Station. Despite Plaintiff's efforts to communicate with Defendant and remedy the situation, Defendant has allegedly not resumed the sale of petroleum products or fulfilled his contractual obligations to purchase petroleum products from Plaintiff. Plaintiff estimates that it has sustained $43,604.00 in losses due to Defendant's failure to purchase and resell Plaintiff's petroleum products.

Plaintiff further alleges that Defendant has breached the terms of the franchise agreements by selling engine oil manufactured by brands other than Shell. In addition, Defendant has allegedly failed

CIVIL NO. 09-1548 (JP)           -3-

to pay Plaintiff $5,400.00 in rent for the months of November 2008 through February 2009, as well as $6,736.95 for gasoline delivered on December 26, 2008, and a returned debit fee.  Currently, Defendant is allegedly operating the Station as a personal venture selling food, cigarettes, and automobile accessories, but has not resumed sales of petroleum products.  Defendant operates the retail store at the Station using the Shell marks to attract customers.

Plaintiff has submitted evidence documenting its allegations regarding Defendant's contractual breaches and Plaintiff's efforts to communicate with Defendant to resolve the situation.  The evidence submitted by Plaintiff includes the three original contracts between the parties, photographs showing the store shelves carrying products manufactured by Shell competitors such as XCEL engine oil, and correspondence between the parties conducted between February 2009 and May 2009.

On February 9, 2009, Plaintiff sent Defendant a written notice of termination of the franchise agreements due to Defendant's contractual breaches.  After a meeting between Defendant Morales and Plaintiff's retail manager, Sol agreed to extend the termination date to March 26, 2009, thereby providing Defendant an additional opportunity to resume gasoline sales and come into compliance with the terms of the franchise agreements.  When Defendant failed to comply within the extended term, Plaintiff's counsel sent a cease and desist letter to Defendant.  Said letter was sent on May 13, 2009,

CIVIL NO. 09-1548 (JP)          -4-

and demanded that Defendant immediately discontinue his use of Shell's trade dress and mark, and return the Station to Sol.

To date, Defendant Morales has allegedly refused to surrender the Station, and has continued conducting retail sales at the Station using Shell trademarks and trade dress. On May 23, 2009, Defendant sent Sol a letter requesting until June 5, 2009 to comply with his obligations or surrender the Station. However, during a meeting with Sol's representative on June 10, 2009, Defendant withdrew his commitment and refused to surrender the Station.

## II. **LEGAL STANDARD FOR A PRELIMINARY INJUNCTION**

The general purpose of injunctive relief is to prevent future acts or omissions of the non-movant that constitute violations of the law or harmful conduct. United States v. Oregon Med. Soc., 343 U.S. 326, 333 (1952). The United States Court of Appeals for the First Circuit has set forth a four part test for trial courts to use when considering whether to grant preliminary injunction requests. Lanier Prof. Serv's, Inc., v. Ricci, 192 F.3d 1 (1st Cir. 1999); Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991). A preliminary injunction is appropriate if: (1) the petitioner has exhibited a likelihood of success on the merits; (2) the petitioner will suffer irreparable injury if the injunction is not granted; (3) such injury outweighs any harm which granting injunctive relief would inflict on the respondent; and (4) the public interest will not be adversely affected by granting the injunction. Narragansett

CIVIL NO. 09-1548 (JP)            -5-

Indian Tribe, 934 F.2d at 5; see, e.g., Aoude v. Mobil Oil Corp., 862 F.2d 890, 892 (1st Cir. 1988); Hypertherm, Inc. v. Precision Products, Inc., 832 F.2d 697, 699 & n.2 (1st Cir. 1987).  Whether to issue a preliminary injunction depends on balancing equities where the requisite showing for each of the four factors turns, in part, on the strength of the others.  Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 611-13 (1st Cir. 1988). Although a hearing is often held prior to entry of a preliminary injunction, a hearing is not an indispensable requirement.  Aoude, 862 F.2d at 893.

### III. **ANALYSIS**

#### A.  **Motion for Preliminary Injunction**

Plaintiff Sol requests that the Court enter a preliminary injunction ordering Defendant Morales to discontinue use of the Shell marks and immediately surrender to Sol the Station, including its underground storage tanks and equipment.  The Court shall now consider Plaintiff's arguments in light of First Circuit's preliminary injunction standard.

##### 1.    **Likelihood of Success on the Merits**

###### a.    *Plaintiff's Breach of Contract and PMPA Claims*

Plaintiff argues that it is likely to succeed on the merits of its breach of contract and PMPA claims because Defendant has violated the terms of the franchise agreements, and because the PMPA

CIVIL NO. 09-1548 (JP)            -6-

requirements for termination of the franchise relationship and initiation of a civil enforcement action have been met. The PMPA provides, in relevant part,

> Any franchisor may terminate any franchise . . . or may fail to renew any franchise relationship [for the following reasons, subject to certain timing and notification requirements] . . .
>
> (A) A failure by the franchisee to pay the franchisor in a timely manner when due all sums to which the franchisor is legally entitled . . .
>
> (B) A failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise . . .
>
> (C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable . . .

15 U.S.C. § 2802(b)(2). Although the PMPA ordinarily requires written notice to the franchisee ninety days in advance of a termination or non-renewal, it allows for a lesser period when ninety days is unreasonable under the circumstances. 15 U.S.C. § 2804.

In the instant case, Plaintiff has submitted evidence indicating that Defendant has failed to pay Sol $5,400.00 in rent and $6,736.95 owed for gasoline delivered on December 26, 2008, and a returned debit fee. As such, Plaintiff is likely to succeed in showing that cause for termination of the franchise agreements exists pursuant to the above-cited subsection A, which lists failure to pay as a valid ground for termination.

CIVIL NO. 09-1548 (JP)            -7-

Plaintiff also alleges that termination of the franchise relationship is reasonable due to Plaintiff's failure to continue selling gasoline at the Station. The PMPA specifically defines "an event . . . as a result of which . . . termination . . . of the franchise relationship is reasonable" as including "failure by the franchisee to operate the marketing premises for . . . 7 consecutive days." 15 U.S.C. § 2802(c)(9). The Court finds that Defendant's cessation of gasoline sales at the Station for a period of over one month preceding Plaintiff's notice of termination creates a high likelihood that Plaintiff will succeed in showing that termination is also appropriate on the basis of failure to operate.

On February 9, 2009, Plaintiff notified Defendant of the immediate termination of the franchise relationship between the parties. Given the seriousness of Defendant's breaches by failure to pay and failure to operate, Plaintiff was entitled to provide less than the usual ninety days notice of termination. Desfosses v. Wallace Energy, Inc., 836 F.2d 22, 28 (1st Cir. 1987) ("less than ninety days notice is permitted if reasonable under the circumstances and if notice is given on the earliest date on which furnishing such notice is 'reasonably practicable.'"); Total Petroleum Puerto Rico Corp. v. T.C. Oil, Corp., No. 09-cv-1105, 2009 WL 702226, at *4 (Pieras, J.) (finding likelihood of success on the merits of PMPA claim and noting that ninety day notice requirement may be excused when reasonable under the circumstances).

CIVIL NO. 09-1548 (JP)        -8-

Pursuant to the terms of the franchise agreements between the parties, Defendant Morales was required to surrender the Station premises within twenty-four hours after the effective date of the termination of the franchise relationship. Plaintiff's evidence indicates that Defendant has not surrendered the Station as required. Under such circumstances, an injunction ordering dispossession is an appropriate remedy. Id. at *7. After examining the arguments and evidence presented, the Court finds that Plaintiff has demonstrated a high likelihood of success on the merits of its breach of contract and PMPA claim.

### ***b.  Plaintiff's Lanham Act Claims***

Sol also argues that the facts demonstrate a likelihood of success on the merits of Plaintiff's claims brought pursuant to the Lanham Act, 15 U.S.C. § 1125(a). Section 1125(a) creates a cause of action for false designation of origin, false descriptions, and dilution. To prevail on a trademark infringement claim under Section 1125(a), a plaintiff is generally required to establish that: (1) he uses and thereby owns a mark; (2) the defendant is using the same or a similar mark; and (3) the defendant's use is likely to confuse the public, thereby harming the plaintiff. Doral Pharmamedics, Inc. v. Pharm. Generic Developers, Inc., 148 F. Supp. 2d 127, 137 (D.P.R. 2001). The First Circuit has held that "the third element of the trademark cause of action, likelihood of confusion, is the central issue in finding trademark

CIVIL NO. 09-1548 (JP)          -9-

infringement." <u>International Ass'n of Machinists and Aerospace Workers</u>, 103 F.3d 196, 200 (1st Cir. 1996).

With regard to the first element, Sol is not the owner of the Shell marks, but is the exclusive licensee of the Shell marks in Puerto Rico. As such, Sol satisfies the statutory requirement that the plaintiff be "any person who believes that he or she is likely to be damaged" by an act of infringement. 15 U.S.C. § 1125(a). With regard to the second element, Defendant's unauthorized use of the mark, Plaintiff has submitted photographs showing that Defendant Morales continues to display the Shell marks at the Station.

With regard to the third element, likelihood of confusion, the evidence indicates that potential customers have no way of knowing that Morales' business is anything other than an authorized Shell station. Plaintiff's photographs show that drivers approaching from various angles and at various distances from the Station are able to see the Shell brand name and the Shell logo displayed prominently. Only after arriving at the Station do consumers learn that Defendant is no longer offering petroleum products for sale. Even then, consumers are likely to remain confused as to whether the retail store component of the business is an authorized Shell store. On the basis of the evidence presented, the Court finds that Plaintiff has demonstrated a high likelihood of success on the merits of its Lanham Act claims.

CIVIL NO. 09-1548 (JP)          -10-

### 2.   Irreparable Harm

The second factor in the preliminary injunction analysis is whether Plaintiff will suffer irreparable harm if the injunction is not granted.  Narragansett Indian Tribe, 934 F.2d at 5.  An injury will only be considered irreparable if no adequate remedy for the injury exists at law.  See Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 36 (1st Cir. 1986).  Monetary damages are usually not considered irreparable injuries.  See DeNovellis v. Shalala, 135 F.3d 58, 64 (1st Cir. 1998) (holding that a temporary loss of income which may be recovered later does not generally constitute irreparable injury).  It is not required that a plaintiff establish that denial of injunctive relief would be fatal to its business; it is sufficient for a plaintiff to show that injury is not accurately measurable, given that irreparable harm is a natural sequel.  See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996) (internal citations omitted).

Plaintiff Sol contends that the ongoing unavailability of petroleum products at the Station is harming Plaintiff's market share and customer goodwill in the area of Guayama, Puerto Rico.  Plaintiff alleges that its market presence in the region has been developed over the course of more than twenty years.  A loss of customer loyalty as a result of Defendant's actions could entail more than a temporary financial loss.  Rather, Plaintiff risks an ongoing

CIVIL NO. 09-1548 (JP)          -11-

reduction in market share due to consumers' opinion that the Station is not a reliable vendor of petroleum products.

Plaintiff also argues that, due to the termination of the franchise agreements, Sol can no longer exercise a contractual right to monitoring and control of the underground tanks associated with the Station. This scenario exposes Sol to risks of environmental damage and liability in the event that Defendant neglects to maintain the tanks properly. Considering these risks and the significant potential harm due to loss of market share, the Court finds that Plaintiff has adequately demonstrated that it will suffer irreparable harm in the absence of a preliminary injunction.

### 3.   Balance of Hardships

The third factor in the analysis for a preliminary injunction requires Plaintiff to show that the irreparable harm that Plaintiff will suffer in the absence of the entry of a preliminary injunction outweighs any harm which granting injunctive relief would inflict on Defendant. Narragansett Indian Tribe, 934 F.2d at 5.

In the instant case, the potential hardship to Defendant that would result from entry of a preliminary injunction is that Defendant would no longer be able to operate his retail sales of food products, cigarettes, and automobile accessories. This hardship offers a weak counterbalance to the ongoing irreparable injury being suffered by Plaintiff. The evidence indicates that Defendant does not have a right to continue his business operations following the termination

CIVIL NO. 09-1548 (JP)           -12-

of the contract. As such, Defendant's potential losses from discontinuation of his retail store operation are a result of Defendant's breaches of contract. Accordingly, the Court finds that the balance of hardships weighs strongly in favor of Plaintiff.

### 4. Public Interest

The fourth and final factor in the preliminary injunction analysis requires the Court to consider whether the public interest will be adversely affected if the injunction is granted. Narragansett Indian Tribe, 934 F.2d at 5. Here, the public interest is harmed when consumers are misled as to the source of the products being offered for sale at the retail store located in the Station. In addition, the environmental risks from unmonitored petroleum storage tanks also negatively affect the public interest. Finally, Defendant's ongoing failure to offer petroleum products for sale harms the public interest because motorists in the Guayama area are unable to purchase gasoline from the Station. The Court notes that these risks are exacerbated by the fact that recently other service stations in Puerto Rico have similarly ceased operations due to the franchisee's noncompliance with contractual terms. See, e.g., Total Petroleum Puerto Rico Corp., 2009 WL 702226 (Pieras, J.). In light of the potential harm to consumers and the public, the Court finds that the fourth factor further supports the entry of a preliminary injunction.

CIVIL NO. 09-1548 (JP)          -13-

**IV. CONCLUSION**

In conclusion, the Court **GRANTS** Plaintiff's motion for a preliminary injunction. Defendant Morales is hereby **ORDERED** to: (1) immediately surrender to Sol the Station, including its underground storage tanks and equipment; and (2) refrain from using the Shell marks.  Plaintiff **SHALL** serve a copy of this Opinion and Order upon Defendant on or before June 29, 2009.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of June, 2009.

                                                              s/Jaime Pieras, Jr.
                                                                JAIME PIERAS, JR.
                                        U.S. SENIOR DISTRICT JUDGE